ANNIE C. McNEIL, administratrix, *vs.* CITY OF BOSTON.

Suffolk. March 7, 1901. — March 12, 1901.

Present: HOLMES, C. J., MORTON, LATHROP, BARKER, & HAMMOND, JJ.

Whether land belonging to a city or town seemingly prepared for a footway and used by the public as such, ever can become a highway or town way by dedication, notwitstanding Pub. Sts. c. 49, § 94, *quære.*

Permitting the use by the public of an ordinary entry or flight of stairs in a building belonging to a city or town is not a dedication, even if a public footway could be so created.

A flight of stairs in a building belonging to a city or town, leading from the outside of the building only to a room in it, is not a highway or town way within the meaning of Pub. Sts. c. 52, §§ 17, 18, giving remedies for death, injury or damage caused by defects therein, nor is it a way " entering on and uniting with an existing public highway" within Pub. Sts. c. 49, § 95, in regard to causing the entrances of such ways to be closed when the public safety demands it or cautioning the public against entering them when dangerous.

A city is not liable for injuries caused by a defect in a flight of steps leading to a basement room of a schoolhouse, used as a polling place, to a citizen who was going down the steps for the purpose of entering the room to vote.

TORT to recover for injuries and conscious suffering of the plaintiff's intestate followed by death, caused by an alleged defect in a short flight of steps leading to a basement room of a schoolhouse at the corner of St. Botolph Street and Cumberland Street in Boston, used as a polling place, when the plaintiff's intestate was on his way to vote, said steps being alleged to be a part of a public footway or highway of the city of Boston. Writ dated November 29, 1898.

The case was heard in the Superior Court upon the following agreed facts:

*o*

On December 21, 1897, the plaintiff's husband and intestate, Norman McNeil, received injuries while walking down a short flight of steps leading into a room, at the farther end of which, polls and voting booths had been erected by the city of Boston for the purpose of holding an election on that day.

On December 28, 1897, said Norman McNeil, after conscious suffering, died in consequence of said injuries, and the plaintiff was duly appointed his administratrix.

The plaintiff gave to the defendant due notice of the time, place and cause of said injuries, and brought this action within the time allowed by law to recover damages therefor.

On said December 21, 1897, and for seven or eight years previously, the defendant owned, occupied and controlled the parcel of land situated on the corner of St. Botolph Street and Cumberland Street within its corporate limits. Upon a part of said parcel of land the defendant in 1889 had erected a public schoolhouse. The room in which the election was taking place on the day of the accident had been used for seven or eight years as a polling place at elections, by the order and consent of the defendant, and no part of the room had been used for school purposes. This room had also been used on different occasions as a ward room for political meetings and the like for seven or eight years before the day of the accident.

St. Botolph Street was at the time of this accident a public highway, duly laid out and established by the city of Boston, and had been a public highway for more than seven or eight years. This street was about thirty-four feet from curb to curb, and on the side next to said parcel of land was a brick sidewalk about nine feet wide and extending the full length of the parcel. Leading from the inner side of said brick sidewalk was an entrance through an iron gate into an open space known as the school yard, and used as a play yard by the children who attended this school. About fifty feet from said brick sidewalk was a door in the schoolhouse building which opened from outdoors upon a short flight of six or seven steps inside the schoolhouse, which led down into the room above mentioned. This room was thirty-seven feet ten inches in length and about thirty feet in width, and about one third of it upon the day of the accident was railed off and was occupied by the voting booths,

the officers of election and the election apparatus. The other two thirds of the room, being the part of the room nearest the door and flight of steps above mentioned, was left free for the public and for the voters.

On the day of the accident, the plaintiff's intestate, who was a duly qualified voter in that precinct and entitled to vote at the election which was then taking place, drove in a carriage from his house to the entrance of the school yard. He alighted upon the brick sidewalk and walked across it through the iron gate down to the door, and was in the act of walking down the short flight of steps on his way to the polls, when, by reason of some defect in the steps, he slipped and fell and received the injuries mentioned above, which were caused solely by the defect in the steps.

The way or route which the plaintiff's intestate walked and travelled upon the day of his accident, from the sidewalk to the room in which the election was taking place, was the usual and proper and only way or route then in use, and this way or route had been used upon many previous occasions by the public and by the voters, with the knowledge and consent of the defendant, and by its order and direction for seven or eight years before. It was used merely as a footway for foot travellers, and was not used and could not be used for carriages and horses and teams. . The steps above mentioned were in the travelled part of the footway leading to the polls.

The accident to the plaintiff's intestate happened about half past eleven o'clock in the forenoon. The polls had been open continuously from six o'clock in the morning, and several hours before the accident to the plaintiff's intestate two or three other persons had slipped upon the same steps upon which the plaintiff's intestate afterwards slipped and fell and received his injuries.

The defendant had not directed or caused the entrance of this way to be closed up, and had not caused any notice to be given that such way was dangerous and had not taken any means to caution the public against entering upon such way, but, on the contrary, had permitted and allowed and invited the public to use this way as above stated.

On the day of the injuries to the plaintiff's intestate, an

election was being held for mayor and other officers of the city of Boston, and this footway was used both in going to the polls and in returning from the polls by men and women who were entitled to vote at that place and at that time, and by other members of the public. The polls had been duly erected in said part of said room by order of the defendant.

The plaintiff's intestate was at the time of his injury in the exercise of due care and diligence, and the defendant was negligent in the premises.

If, upon the above facts and upon all inferences of fact which might be drawn therefrom, a jury would be warranted in finding that the place of the accident was a way, within the meaning of the statutes imposing a liability upon cities for defects in ways, the defendant was to be defaulted, and the plaintiff's damages were to be assessed by a jury in the Superior Court. If, on the other hand, a jury would not be warranted in finding that the place of the accident was a way, within the meaning of such statutes, judgment was to be entered for the defendant.

On the foregoing facts the Superior Court gave judgment for the defendant; and the plaintiff appealed.

*C. Reno*, for the plaintiff.

*S. M. Child*, for the defendant.

HOLMES, C. J. If for any reason land belonging to a city or town, seemingly prepared for a footway and used by the public as such, can become a highway or a town way simply by dedication, notwithstanding Pub. Sts. c. 49, § 94, which we are far from intimating, the elements of a dedication are wanting in the case of an ordinary entry or flight of stairs in a public building. In such a case it is evident to every one from the visible facts alone that the use of the entry or stairs, like the use of the rooms to which they lead, is merely permissive during such time as the public authorities continue to devote the building or rooms to the same purposes as at present, and that it may be stopped at any moment. Furthermore, a flight of stairs in a building leading only to a room in it is not a highway or a town way within the meaning of Pub. Sts. c. 52, §§ 17, 18, or a way "entering on and uniting with an existing public highway" within c. 49, § 95. *Sullivan* v. *Boston*, 126 Mass. 540. The argument to the contrary is merely an attempt by a perversion

of language from its plain and common meaning to make out a liability of cities and towns which heretofore has been decided not to exist. *Hill* v. *Boston*, 122 Mass. 344.

*Judgment for defendant affirmed.*