# THE BOARD OF COUNTY SCHOOL COMMISSIONERS OF ANNE ARUNDEL COUNTY *vs.* DR. LOUIS B. HENKEL, JOHN F. STRANGE, ROBERT MOSS.

*State Board of Education*: *no jurisdiction over purely legal questions*: *Acts of 1896, Ch. 275, creating Annapolis High Schools; appointment of trustees. Acts of 1904, Ch. 584*: *General law for appointment of school trustees. Repeal of statutes by implication; not favored.*

Chapter 275 of Acts of 1896 provided for the erection of a high school at Annapolis, to which both Anne Arundel county and the City of Annapolis were to contribute, and which was to be under the control of the school trustees to be appointed by the Board of County School Commissioners to succeed the trustees named in the act according to its conditions; such trustees were given the absolute power to appoint and remove teachers for the said school independent of the Board of County School Commissioners; sec. 7 of Ch. 584 of the Acts of 1904 (Codified as sec. 7 of Art. 77 of the Code), amended the general law for the appointment of district school trustees and teachers; it was *held* that the general law of 1904 did not repeal the Act of 1896, Ch. 275, relating to the High School of Annapolis which it created.

p. 110

The repeal of statutes by implication is not favored. p. 105

The Circuit Court of Anne Arundel County had jurisdiction to entertain an appeal upon an application for a mandamus to direct the County School Commissioners of that county to appoint trustees for the Annapolis High School according to the provisions of the Acts of 1896. p. 105

Section 11 of Ch. 584 of the Acts of 1904 (Code, Art. 77, sec. 11), gives to the State Board of Education jurisdiction

to decide issues involving the proper administration of the
public school; but does not give the board any authority
to decide purely legal questions.                           p. 103

*Decided January 9th, 1912.*

Appeal from the Circuit Court of Anne Arundel County
(BRASHEARS, J.).

The cause was argued before BOYD, C. J., BRISCOE,
PEARCE, BURKE, THOMAS, PATTISON, URNER and STOCK-
BRIDGE, JJ.

*Clayton Purnell* (with whom was *Nicholas H. Green* on
the brief), for the appellant.

*Robert Moss,* for the appellees.

PATTISON, J., delivered the opinion of the Court.

The appellees, citizens and taxpayers of Anne Arundel
county, Md., filed their petition in the Circuit Court for
that county asking that a writ of mandamus be issued,
directed to the Board of County School Commissioners of
Anne Arundel County, commanding them to appoint, pursu-
ant to Chapter 275 of the Acts of the General Assembly of
Maryland, passed at its January Session, 1896, and in accord-
ance with the provisions thereof, six district trustees for the
white public school in the City of Annapolis mentioned in
the petition.

The petition alleged that each of the six trustees of said
school had resigned, and that a vacancy existed in each of
said offices. The petition further alleges that the Board of
County School Commissioners, ignoring the provisions of
Chapter 275 of the Acts of 1896, appointed as trustees for
said school three men, "under the pretense that said Act of
Assembly is no longer in force and that the same has been
repealed."

The School Commissioners in their answer to the petition denied the existence of the vacancies in the board, as alleged in the petition, and alleged "that said board is composed of three persons, residents of the school district, as provided in section 7 of Article 77 of the Code of Public General Laws, title "Public Education." The answer further alleges "that sections 16, 17 and 18 of Chapter 275 of the Acts of 1896 are inoperative and no longer in force, in that the provisions thereof are repealed by Chapter 584 of the Acts of the General Assembly of Maryland, passed in 1904, which "as the answer alleges "was a general scheme of legislation for the whole State, governing and controlling all public school officers and providing for the conduct and management of all the public schools of the State."

The answer further alleges that by section 11 of Chapter 584 of the Acts of 1904 the power is conferred upon the State Board of Education to hear and determine all controversies "between those entrusted with the administration of our system of education and those involving the proper administration of the public school system," and that in so acting its power is summary and exclusive and its decision final. And it further alleges that the controversy in this case was referred to the State Board of Education for its decision and that it decided adversely to the contention of the petitioners "and advised that the respondents should take charge of the Annapolis school and proceed to conduct it as other schools of the same class are required to be conducted, under the provisions of the general law applicable to the entire State." This decision of the State Board of Education, the answer alleges, was final, and thus the Circuit Court for Anne Arundel County was without jurisdiction to hear and determine the issues presented by the petition and answer.

In the record we find an agreement between the counsel for the plaintiff and the counsel for the defendant whereby "It is agreed in this case that the office of Board of District School Trustees for the white public school in the City of Annapolis is vacant, and that if the provisions of Chapter

275 of the Acts of 1896 are operative and in force, the said Board of District School Trustees is composed of six members, but if said Act of 1896 has been repealed by Chapter 584 of the Acts of 1904 and subsequent legislation, said Board of District School Trustees is composed of three members, and the question of which act is in force is one of the questions submitted to the Court for its decision in the above case."

There are but two question presented by this appeal:

1st. Did the Circuit Court for Anne Arundel County have jurisdiction to hear and determine the issues presented by the petition and answer?

2nd. Were sections 16, 17 and 18 of Chapter 275 of the Acts of 1896 repealed by Chapter 584 of the Acts of 1904, as claimed by the appellant?

We will consider these questions in the order in which they are presented.

Section 11 of Chapter 584 of the Acts of 1904, codified as section 11 of Article 77 of the Code of Public General Laws of 1904, provides that "The State Board of Education shall, to the best of their ability, cause the provisions of this article to be carried into effect;" and "they shall explain the true intent and meaning of the law and they shall decide, without expense to the parties concerned, all controversies and disputes that arise under it, and their decision shall be final."

It is under this provision of the law that the appellant contends that the power and jurisdiction is vested exclusively in the State Board of Education to hear and determine the issues presented by the petition and answer in this case, and that the Circuit Court for Anne Arundel County was without jurisdiction to hear and determine the same.

It is contended by the appellees that the vacancies should be filled by the appointment of six persons as trustees, three men and three women, to be made under and by virtue of Chapter 275 of the Acts of 1896, with the full powers therein conferred upon them. While it is contended by the appel-

lant that sections 16, 17 and 18 of Chapter 275 of the Acts of 1896 have been repealed by Chapter 584 of the Acts of 1904 and are no longer operative, and that the vacancies should be filled by the appointment of but three persons as trustees, to be made under the last named statute, with only the limited powers therein conferred upon them.

The appellant, in support of its contention that this question can not be heard and determined by the Circuit Court for Anne Arundel County, relies upon the case of *Wylie et al., Trustees,* v. *The Board of School Commissioners of Allegany County,* 51 Md. 401; *Shober* v. *Cochrane,* 53 Md. 545 and *Underwood* v. *School Board,* 103 Md. 181.

In the first of these cases (*Wylie et al., Trustees,* v. *Board of School Commissioners of Allegany County*) a bill was filed praying for an injunction to restrain the Board of County School Commissioners of Allengany County from converting a public school house, which was at the time of the filing of the bill used for primary district school purposes, under the supervision of the complainants as trustees, to the use and purposes of a high school. The issue there presented was held to fall within the scope of the power conferred by section 11 of Article 77, on the State Board to decide all disputes arising under that article, and as the power was comprehensive enough to deal with the issue in the case it was held that the Court of equity should not interfere with its exercise.

In the second case (*Shober* v. *Cochrane*) Shober applied for a writ of mandamus to compel Cochrane not to interfere with or prevent him from discharging his duties as examiner and secretary and treasurer of the Board of School Commissioners of Allegany County and from receiving the emoluments thereof, and to yield up said office to the petitioner. In that case the Board of School Commissioners, appointed by the Circuit Court for Allengany County, at the time of its organization, January 1st, 1879, elected J. W. S. Cochrane examiner and secretary and treasurer of the board. He entered upon the duties of the office and continued to serve

until the 6th day of January, 1880, regularly performing
the duties of his office. In January, 1880, after the expira-
tion of the term for which said Board of School Commis-
sioners had been appointed, and while holding over under
their original appointment, the Circuit Court, in which the
power of appointment was at that time lodged, having failed
to appoint their successors, they elected Shober as examiner
and secretary and treasurer. This appointment resulted in
a controversy and the whole controversy was submitted to the
State Board of Education, before whom all parties con-
cerned, including the school commissioners, appeared and
were heard, and the State Board adjudged and determined
in favor of Cochrane. It was then that Shober applied for
the writ of mandamus, which was refused him, and upon
appeal, this Court filed a *per curiam* order affirming the
order of the Circuit Court, upon the ground that "the power
to decide the matter in dispute was vested in the State Board
of Education and its decision thereon was final and con-
clusive."

In the case of *Duer* v. *Dashiell*, 91 Md. 671, in which a
mandamus was asked for requiring the appellant therein,
who had been the secretary, treasurer and examiner of the
former board of school commissioners, to deliver the books
and papers of the office to the appellee who was elected to the
same office by the new board, this Court, in speaking of the
two cases just cited, said: "Both *Wylie's* and *Shober's cases*
were disputes between functionaries of the department of
public education over which it was the purpose of section 11
of Article 77 of the Code to give the State Board of Educa-
tion jurisdiction. Neither of these cases involved, as the
one before us does, the important legal question of the effect
of an Act of the Legislature, repealing the law under which
a Board of School Commissioners were appointed, upon the
tenure of office of a subordinate official, appointed by the
board while they were still in office. We do not think it was
the purpose of the Legislature in enacting section 11 to
withdraw the determination of purely legal questions like

this from the Courts and commit them to the Board of Education for decision. The real issue in this case is not one involving the proper administration of the public school system, but it is a question of legal effect of the passage by the Legislature of the Act of 1900, Chapter 29, upon the status of a subordinate official appointed by a school board which that act legislated out of office. The Circuit Court therefore had jurisdiction to entertain and pass upon the application for the mandamus and its order directing the writ to be issued will be affirmed."

In the case of *Underwood* v. *School Board* a bill in equity was filed against the Board of County School Commissioners of Prince George's County, the secretary and treasurer of the board, and Mrs. Nally, to enjoin the school board and the secretary and treasurer from paying Mrs. Nally the salary as teacher of a public school in that county for the time therein stated and to enjoin Mrs. Nally from receiving the same. The facts of that case were: Miss Queen, afterwards Mrs. Nally, was a regularly appointed teacher in a public school of said county, and while so acting on the 23rd day of December, 1903, sent a letter to each of the three trustees telling them she was to be married on the 26th of that month and on that day she did marry Henry Nally. In her letter she stated: "I will continue to teach until the end of the scholastic year, June 15th, 1904," but prior to the last named day, on June 9th, 1904, she again wrote to the trustees saying, "If satisfactory to you, I will teach at this school another scholastic year. I trust my act meets your approval." On August 13th following the trustees notified her in writing that her resignation was accepted and on the same day appointed another person as principal of the school. Upon appeal to the county board it decided that she had not resigned her school and consequently the appointment of the new teacher could not be confirmed. Whereupon the trustees on September 9th notified Mrs. Nally that her services as teacher of the school would not be required after the 10th of October following. Upon the receipt of this notice she requested

them to furnish her with the reasons of her removal, and in assigning their reason therefor the trustees stated that it "was for the best interest of the school." She again appealed to the county board, but upon this appeal the trustees were sustained and an order was passed confirming the new appointment. From the decision of the county board an appeal was taken by Mrs. Nally to the State Board of Education, to which board the county board forwarded copies of the letters sent to Mrs. Nally by the trustees. The State Board held, upon appeal, that the reason assigned by the trustees, that it was for the best interest of the school, did not constitute a reason as provided for by the statute, and also that the alleged notice was not in conformity with the law. On receipt of the resolution so passed by the State Board, the county board recognized Mrs. Nally as the teacher of the school, and again she entered upon her duties as teacher. It was then that the injunction above mentioned was asked for.

It was there held, JUDGE BOYD speaking for the Court: "That there can be no doubt that the State Board had power to advise the county board and it was the duty of the latter to follow the advice of the State Board on the subject; * * * and it is right that such controversies should be settled by some tribunal connected with the public school system. When one applies for the position of teacher he makes himself subject to the laws governing them; * * * It must have been very injurious to this school to have had such a controversy and great confusion was caused by the conflicting action of the trustees and the county board. It is well, therefore, that there is a tribunal having jurisdiction over the State to settle such controversies and to guide the county board in the discharge of their duties. Of course there may be occasions when it is proper and necessary to apply to the Courts as in *Duer* v. *Dashiell,* 91 Md. 660, where a purely legal question was involved."

The case of *Underwood* v. *School Board* like the cases of *Wylie* and *Shober,* was a dispute between functionaries of

the department of public education, over which, as was said in *Duer* v. *Dashiell,* it was the purpose of section 11 of Article 77 to give the State Board of Education jurisdiction. In all three of those cases the questions presented involved only the proper administration of the public school system, and were, therefore, unlike the questions presented in the case of *Duer* v. *Dashiell* and in the present case. In the case of *Duer* v. *Dashiell* the question there involved was the effect of an Act of Legislature, repealing the law under which a board of school commissioners were appointed, upon the tenure of office of a subordinate official appointed while they were still in office. In this case the question involved is the effect of the passage of Chapter 584 of the Acts of 1904 upon sections 16, 17 and 18 of Chapter 275 of the Acts of 1896, and upon the determination of it depends whether the aforesaid sections of Chapter 275 of the Acts of 1896 are still in force and operative and are to be followed by the appellant in this case in the filling of the vacancies in the local board of trustees hereinbefore mentioned.

In this case, as in the *Duer* v. *Dashiell case,* the real issue is not one involving the proper administration of the public school system, but is a purely legal question. The Circuit Court, therefore, had jurisdiction to entertain and pass upon the application for the mandamus asked for, and as it ordered the writ to be issued, we will now consider whether it was right in so doing.

It is not contended that sections 16, 17 and 18 of the Acts of 1896, are repealed by any express provisions contained in the Acts of 1904, but that it is repealed by implication, the provisions of the latter act being inconsistent and irreconcilable with the former, as it is contended by the appellant.

It is the well established rule of law in this State "That the repeal by mere implication of a former by a subsequent statute is never favored by the Courts, and it is only where they are clearly irreconcilable and not susceptible of any such fair interpretation as would allow of their standing together, that such repeal will be declared." *Higgins* v.

*State*, 64 Md. 419; *Snowden* v. *State*, 69 Md. 208; *Mayor, etc., of Cumberland et al.* v. *Magruder et al.*, 34 Md. 386; *Garitee* v. *Mayor and City Council*, 53 Md. 435; *State* v. *Northern Central Ry. Co.*, 44 Md. 167. "It is only when the two acts are repugnant and plainly inconsistent with each other that the rule applies. If the two acts can *by a fair and reasonable construction* stand together, there is no ground on which it can be held that the latter act operates as a repeal of the former act." *Frostburg Mining Co.* v. *C. & P. R. R. Co.*, 81 Md. 35. And again, it is said in the case of *State* v. *Falkenham*, 73 Md. 467, "As respects subsequent legislation, the rule becomes but the declaration of the common law, that local laws or special laws shall not be held repealed except by the clearly indicated purpose on the part of the Legislature."

In considering the question here presented we think it right and proper that we should refer to sections of Chapter 275 of the Acts of 1896, other than sections 16, 17 and 18, in order that the character, purpose and object of this legislation may be better understood.

This act provided for the erection and furnishing of a school building to be built upon a lot of land in the City of Annapolis owned and held by the County School Commissioners of Anne Arundel County. In the act certain persons were named in a building committee, in whom was vested certain power and authority mentioned therein. For the purpose of contributing towards the erection and furnishing of said school building, the School Commissioners of Anne Arundel County were authorized and directed to issue bonds in the name of the school commissioners, with the endorsement thereon of the county commissioners of said county, to the amount of twelve thousand dollars, and the Mayor, Councellor and Aldermen of the City of Annapolis, for the purpose of contributing towards the erection and furnishing of said building, were also authorized and directed to issue bonds in the name of the City of Annapolis to an amount not exceeding six thousand dollars; and an act subsequent

thereto (Act of 1898, Chapter 372) was passed authorizing
and directing the School Commissioners and the Mayor,
Counsellor and Aldermen of the City of Annapolis to issue
additional bonds for the purpose of further contributing to
the completion and furnishing of said building. The addi-
tional amounts so contributed by them respectively being
apportioned in the same manner as in the original Act of
1896. This last-named act made it "the duty of the Board
of School Trustees of Annapolis Public School and the
Board of County School Commissioners of Anne Arundel
County to establish and maintain, in addition to the primary
and grammar school, a high school in the City of Annapolis."
It is thus shown that the erection and furnishing of this
school building was the result of the contributions of both
the County School Commissioners and the City of Annapo-
lis, and was not built by money contributed by the School
Commissioners alone, as in the case of most buildings
erected for public school purposes in this State.

In the furtherance of the objects and purposes of this stat-
ute, section 16 provides that the district school trustees for
said school shall always be composed of six persons, three
of whom shall be men and three of them women, and those
who were first to act as such trustees are therein named.
These, by the statute, are directed, within thirty days after
the first day of May of the year 1906 to meet and enter upon
the duties assigned them by *Chapter 5 of Article 77 of the
Code of Public General Laws,* and "at their first meeting
they shall appoint a chairman to hold office for one year and
shall give notice of such appointment to the secretary of the
Board of County School Commissioners; they shall have
all the rights and powers, and shall discharge all the duties
conferred and imposed by Chapter 5 upon district school
trustees, *except that they and their successors shall have the
absolute power of appointment and removal of the teachers
of said district* school without the approval of said Board of
County School Commissioners."

Section 17 classifies the trustees so named in section 16, placing in each class one man and one woman, the first class to hold office for one year, the second for two years, and the third for three years.

Section 18 provides that vacancies in said Board of District School Trustees "shall be filled by the Board of County School Commissioners; each such appointment to fill a vacancy caused by the expiration of the term of office, shall be for the term of three years from the first day of May when such term expires, and each such appointment to fill any other vacancy shall be for the unexpired portion of the vacated term; such appointees shall be citizens of Annapolis, who will take an active interest in the management of said school, a woman shall always succeed a woman and a man shall always succeed a man; so that equality in that respect shall always be maintained among the trustees, and as far as possible equality of representation shall always be maintained among them in respect of either political views in making appointments to fill vacancies in their number."

It is section 7 of Chapter 584 of the Acts of 1904, codified as section 7 of Article 77 of the Code of Public General Laws, that the appellant contends repeals sections 16, 17 and 18 of Chapter 275 of the Acts of 1896. That section provides that: "The Board of District School Trustees shall be composed of three persons, *residents of the school district and county where said school may be located,* who shall be appointed by the county school commissioners on the first day of May (August in the amended Act of 1892) or at their first meeting thereafter, *which must be held during the month of May in each year,* and who shall meet within thirty days after their appointment and enter upon the duties assigned them in Chapter 5 of this act. At their first meeting they shall appoint a chairman and shall give notice of their appointment to the secretary of the board of county school commissioners. *When the trustees appoint a principal teacher, and the appointment shall be confirmed by the board of county school commissioners, the said principal*

*teacher shall be ex officio secretary* of the board of district trustees," etc.

The only amendments or modifications thereby made to the provisions of section 7 of Article 77 as it stood at the time of the passage of the Act of 1896, Chapter 275, are shown by the words written in italics; that is, with the elimination of the words italicized the section will then appear as it stood prior to the passage of the Act of 1896.

Both by section 16 of the Act of 1896 and section 7 of the Acts of 1904 the trustees appointed thereunder are directed within thirty days after their appointment to meet and enter upon the duties assigned them by *Chapter 5 of Article 77 of the Code of Public General Laws.* By reference thereto it will be found in section 27 thereof—the only section in which we are interested in the determination of the question before us—that at the time of the passage of the Act of 1896 the local board of trustees, among other duties thereby imposed upon them, were " to employ the teacher or teachers, subject to the confirmation by the board of county school commissioners," but it will be observed that the Act of 1896 specially provides that the powers of the trustees appointed under that act shall not be limited to the appointment of teachers, subject to approval of the commissioners, but that they and their successors shall have the absolute power of appointment and removal of such teachers without the approval of the said board of county school commissioners. It is also true that since the passage of the Act of 1896, Chapter 275, no material change has been made in the above quoted language from section 27 of Chapter 5 of Article 77, but like section 7 of said article it practically remains the same as it was at the time of the passage of the Act of 1896, the only modification being that the trustees shall appoint *"the principal teacher"* and not *"the teacher or teachers,"* as originally provided, subject to the confirmation of the school commissioners.

It will thus be seen that the Act of 1904, Chapter 584, is no more inconsistent with the special Act of 1896, so far as the questions here involved are affected thereby, than was the statute it repealed and re-enacted with amendments, which

was in full force and effect at the time of the passage of said special act. The special statute passed at such time was to apply only to the school to be opened as the result of its special provisions. The passage of it had no effect upon the general statute, nor was it so intended. The general statute continued to apply to all schools to which it applied before the passage of that act. This school, created by the special statute and by the provisions of which the costs and expenses of the erection and furnishing of the school building were borne in part by the school commissioners and in part by the City of Annapolis, was not intended to be included within the class of schools to which the above cited provisions of the general law applied. In 1910, by the passage of Chapter 386, the management and supervision of the school commissioners over high schools of the State were intended to be enlarged, and it was specially provided that nothing in that act should be construed to repeal the provisions of sections 16, 17 and 18 of Chapter 275 of the Acts of 1896, applying to the Annapolis public high school.

We do not think that the general Act of 1904, containing no express provisions repealing the special Act of 1896, and containing no provisions more inconsistent with such special law than the statute it repealed and re-enacted, can have the effect of repealing such special law. The two statutes are not irreconcilable. The former had application to a particular school, the one mentioned in this controversy, while the latter applied to a general class of schools which did not embrace the school here involved.

But as the order of the lower Court directing the mandamus to issue is incomplete in its directions as to the appointment of the trustees as was conceded in the argument before us, we will, without affirming or reversing the lower Court in passing that order, remand the case, that an order may be passed in conformity with this opinion and the Act of 1896, Chapter 275.

> *Cause remanded without affirming or reversing the order appealed from, costs to be paid by the appellants.*